# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 1895 | **DATE** | 12/1/2011 |
| **CASE TITLE** | Ellis vs. Country Club Hills | | |

**DOCKET ENTRY TEXT**

This matter is before the Court on the Plaintiff's motions *in limine* [92, 93, 94, 95, 96, 97, 98, 122] and the Defendants' motions *in limine* [101]. For the reasons discussed below and in open Court on November 28, 2011, the Plaintiff's motions are granted in part and denied in part and the Defendants' motions are granted in part and denied in part.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

**I.  Background**

This lawsuit arises out of a May 29, 2004 visit that Defendants—Country Club Hills police officers—paid to the home of Plaintiff Bernard Ellis. The officers arrived at Plaintiff's residence in response to a 911 call reporting a possible domestic disturbance. During the course of the encounter, the officers repeatedly shocked Plaintiff with a taser, handcuffed him, and placed him under arrest. Plaintiff brought claims under 42 U.S.C. § 1983 against the City of Country Club Hills and Country Club Hills Police Officers McKinney and Jones, alleging Defendants used excessive force during the arrest and that Defendants provided inadequate medical treatment in violation of the Eighth and Fourteenth Amendments.

Progress on the case was halted for a lengthy period of time on account of unrelated criminal cases in which Plaintiff was the defendant. Plaintiff ultimately entered a guilty plea to a two count indictment brought in the Northern District of Illinois and was found guilty by a jury on all counts of a nine count indictment brought in the Northern District of Indiana. (The details of the convictions will be discussed later in this opinion, in connection with the rulings on the parties' motions *in limine*.) The Court of Appeals set aside Plaintiff's conviction on one count of the Indiana indictment on double jeopardy grounds, but affirmed the convictions as to the remaining counts in both the Illinois and Indiana cases. Plaintiff presently is incarcerated in a federal correctional facility in Yazoo City, Mississippi, where he is serving a 40-year sentence.

Following the conclusion of Plaintiff's criminal trials, this civil case proceeded through the discovery and summary judgment phases. On March 24, 2011, this Court issued a memorandum opinion and order [82] granting the City's motion for summary judgment on the claims against it raised in Counts I and II and on an aspect of Count III relating to the scope of the City's indemnification obligations under state law. As set forth in the pretrial order, the remaining claim is for excessive force against the Defendant Officers.

**STATEMENT**

## II.  Legal Standard

A motion *in limine* is a motion "at the outset" or one made "preliminarily." BLACK'S LAW DICTIONARY 803 (8th ed. 2004). The power to rule on motions *in limine* inheres in the Court's role in managing trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that, when used properly, the motions may sharpen the issues for trial). The party seeking to exclude evidence has the burden of demonstrating that the evidence would be inadmissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1766525, at *2 (N.D. Ill. Apr. 14, 2008).

Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989); see also *Luce*, 469 U.S. at 41-42 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *Jonasson*, 115 F.3d at 440 (delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury). Finally, although motions *in limine* typically address evidentiary matters, they may also relate to other matters, such as affirmative defenses and proper lines of inquiry at trial. See, *e.g.*, *United States v. McCloud*, 590 F.3d 560, 566-68 (8th Cir. 2009) (affirming trial court's *in limine* ruling regarding a mistake-of-age defense); *United States v. Price*, 520 F.3d 753 (7th Cir. 2006) (recounting a case's procedural history).

## III.  Plaintiff's Motions *in Limine*

### A.  Current Incarceration

Plaintiff moves *in limine* to prevent Defendants from referencing Plaintiff's current incarceration. As explained on the record in open Court at the final pre-trial conference on November 28, 2011, the Court grants Plaintiff's motion insofar as Defendants may not make direct reference to Plaintiff's current incarcerated status. *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992) (noting that "evidence of current incarceration is highly prejudicial, and therefore courts should not be quick to admit such evidence," particularly in civil rights cases). With that said, as counsel surely recognize, the jury will be free to draw reasonable inferences from the admissible evidence, and on that basis may well infer – particularly if Plaintiff testifies and Defendants use Plaintiff's prior convictions for impeachment – that Plaintiff is in fact incarcerated. Those inferences will be for the jury to draw if they are so inclined; what Defendants may not do is directly refer to Plaintiff's current incarceration, either in testimony or argument of counsel.

### B.  Gang Involvement

Plaintiff also moves *in limine* to prevent Defendants from referencing Plaintiff's gang involvement, activities, and individuals. By way of background, as the Seventh Circuit noted in its opinion disposing of Plaintiff's appeals of the Illinois and Indiana convictions referenced above, Plaintiff has "admitted he was a member of the Gangster Disciples, acknowledged he was an enforcer for the gang, and said that he always carried a gun for protection." *United States v. Ellis*, 622 F.3d 784, 788 (7th Cir, 2010). Notwithstanding that admission, however, Plaintiff's motion is granted under Federal Rule of Evidence 403.

**STATEMENT**

Like current incarceration, references to gang involvement and gang-related activities generally are highly prejudicial because of the negative connotations ascribed to such activities by the general public. Plaintiff's criminal case is a case in point. *Id*. at 788-89 ("In August 2005 federal agents caught Ellis on audiotape giving a detailed and gruesome account of acts of torture and extortion he committed while shaking down Chicago drug dealers as an enforcer for the Gangster Disciples"). Weighed against the high likelihood of prejudice from such testimony is the probative value of it, which is slight in the circumstances of this civil case. As the Court explained on the record at the pre-trial conference, there is no direct link in the record of this case between any gang-related activity and the incident that gave rise to this lawsuit. The facts that (1) Plaintiff may have made reference to certain guns that he claimed to possess and (2) he may have obtained those weapons in furtherance of gang involvement is not a sufficient link to overcome the substantial prejudice that would inure if Defendants were permitted to elicit testimony on the subject of Plaintiff's involvement with gangs.

At the same time – as also discussed at the pre-trial conference – to the extent that Plaintiff testifies that he lost legitimate income opportunities as a result of Defendants' actions, counsel for Defendants will be permitted to inquire as to the basis for that claim and to ask, for example, whether Plaintiff previously earned money by selling drugs or was involved in other illegal activity, provided that counsel has a good faith basis for asking such questions and avoids incorporating any references to gang involvement or activities.

At the pre-trial conference, counsel engaged in a discussion of whether a modification to one of the proposed jury instructions on damages might obviate any reason for Defendants to pursue the line of inquiry discussed in the preceding paragraph. Counsel are encouraged to continue exploration of that issue and to update the Court at the beginning of the trial day on December 5, 2011.

### C. Other Cases Involving Plaintiff and Civilian Clothes

Next, Plaintiff moves *in limine* to prevent Defendants from referencing (1) testimony from any other cases in which Plaintiff is or was involved and (2) to allow Plaintiff to wear civilian clothes during the trial. As stated on the record in open Court on November 28, 2011, these motions are unopposed and thus are granted without further discussion. The Court will appreciate any efforts by the Bureau of Prisons to effectuate this order consistent with the applicable BoP policies.

### D. Prior Convictions

Plaintiff seeks an *in limine* ruling that the Court prevent Defendants from introducing Plaintiff's prior convictions for the purpose of impeachment if he testifies at trial. According to Defendants, Ellis has three convictions[1] that are admissible under Fed. R. Evid. 609: one in 2003 for felony intimidation of a witness, one in 2008 for felon in possession and aiding and abetting the making of a false statement, and another in 2008 for felon in possession.[2]

> [FN 1] Plaintiff mentions three other convictions, which happened in 1985, 1993, 1995. All of those convictions occurred outside the 10-year window referenced in Rule 609, and there are no extraordinary circumstances present here that would permit use of such dated convictions as impeachment in this case under controlling Seventh Circuit precedent.
>
> [FN2] In their motions, the parties disagree as to whether the Illinois and Indiana convictions overlap. However, the Seventh Circuit dealt with both cases in a

single appeal, upholding the conviction on both counts in the Illinois case (05-cr-756), affirming as to eight of the nine counts of conviction in the Indiana case (05-cr-131), reversing as to one count in that case, and remanding the Indiana case for resentencing. In its opinion, the court of appeals made clear that the Indiana and Illinois cases involve separate convictions save for the one count as to which the conviction was set aside on double jeopardy grounds. For present purposes, Plaintiff stands convicted in the Illinois case of two counts of being a felon in possession of a firearm and in the Indiana case of five counts of aiding and abetting the making of a false statement intended to deceive a licensed gun dealer and three counts of being a felon in possession of a firearm.

Federal Rule of Evidence 609(a) provides that "[f]or the purpose of attacking the credibility of a witness . . . evidence that an accused has been convicted of such a crime [i.e. one punishable by more than a year's imprisonment] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a). The Seventh Circuit has articulated a five-part test "to guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004).

Here, the first factor—the impeachment value of the prior crime—weighs in favor of Plaintiff as to the 2003 and 2008 Illinois convictions and in favor of Defendants as to the 2008 Indiana conviction in that in the latter case Plaintiff was convicted of five counts of aiding and abetting the making of a false statement (see *Ellis*, 622 F.3d at 789). See *Montgomery*, 390 F.3d at 1015 (impeachment value greater if convictions implicate truthfulness). The second factor—the timing of the prior conviction—weighs in favor of Defendants. All three convictions occurred within the last ten years and thus "fall within the ten-year period of admissibility specified in" Rule 609(b). *Id*. The third factor—the similarity between the past crimes and charged crime—favors the admission of all three convictions. Because Ellis is the plaintiff and not the defendant in this case, there is less concern that the jury is likely to misuse the evidence for purposes other than impeachment. *Bruce v. City of Chicago*, 2011 WL 3471074, at *10 (N.D. Ill. July 29, 2011); see also *Montgomery*, 390 F.3d at 1015 ("the convictions are not similar to his current offense and thus would *not* tend improperly to suggest to the jury any tendency on his part to commit the instant offense") (emphasis in original).

Most significantly, the fourth and fifth factors—the importance of defendant's testimony and the centrality of credibility—weigh heavily in favor of admission. The parties acknowledge that this case revolves around the credibility of the key witnesses, most of whom are parties to the case.[3] Assuming Ellis's testimony conflicts with the officers' testimony, credibility will be the central issue at trial and the jury is entitled to have information to evaluate Ellis's truthfulness. See *Montgomery*, 390 F.3d at 1016 (district court correctly recognized that defendant's credibility was central to the case and impeachment with prior drug conviction was proper); *United States v. Grant*, 396 F.3d 906, 909-910 (7th Cir. 2005) (given defendant's theory that he possessed a pipe, not a gun, his credibility was crucial and therefore, impeachment with eight year-old conviction for drug crime was proper).

> [FN3] The centrality of Plaintiff's testimony to his theory of the case has been stressed in pre-trial motions directed to ensuring Plaintiff's availability to testify notwithstanding his current incarceration. Because Plaintiff cannot afford the costs of

**STATEMENT**

> transportation and security that he would incur if he were to be brought from Mississippi to Illinois for trial, arrangements have been made for Plaintiff to testify by video conference and for Plaintiff to be able to observe the trial proceedings – and consult with his attorneys off the record – through the video conference as well. As discussed at the pre-trial conference, the Court will craft an appropriate instruction to introduce to the jury the notion of testimony that is not presented live in the courtroom, but rather by video conference or through deposition excerpts.

In sum, taking into account all five factors, Plaintiff's motion is denied insofar as Defendants can use the 2003 conviction, the 2008 Illinois convictions, and the 2008 Indiana convictions for the purpose of impeachment only. The court reiterates that (1) Defendants' use of the convictions is limited to the date of the conviction, the crimes charged, and the sentence imposed (see *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992)) and (2) the Court will fashion an appropriate limiting instruction the explain the proper uses of prior convictions for impeachment at trial.

    **E.    References to Domestic Violence**

Plaintiff moves *in limine* to prohibit all references to domestic violence, domestic dispute, or any protective orders. As explained at the pre-trial conference, that motion is denied in part. As the parties' agreed proposed jury instructions indicate, "the perspective of a reasonable officer facing the circumstances that Defendant[s] faced" is at issue in this case. It is, in fact, one of the principal issues that the jury will be asked to resolve. Those "circumstances" include what was known to the officers about (1) why they were dispatched to Plaintiff's residence and (2) what they learned when after they arrived up to and including their encounter with Plaintiff himself. To the extent that the officers were told that there was a "domestic disturbance in progress" and the other details and information that they experienced at the residence, such information is highly probative at least as to their states of mind, if not for the truth of the matters asserted – that is, whether a domestic battery did in fact occur on that date. Police officers arrive at the scene of a reported "domestic disturbance" with a different mindset than officers who are responding to a call about a cat stuck in a tree, and the jury is entitled to understand the circumstances that were known to the officers at the relevant time periods.[4]

> [FN4] On a related note, correspondence from counsel since the pre-trial conference suggests that Defendants will be presenting a motion to permit the testimony of certain witnesses (Patrice Ellis and Christopher Ammons) by deposition on the ground that they are unavailable. To expedite consideration of such a motion, the parties are directed (1) to discuss whether there is agreement on whether the Rule 32(a)(4) standards have been satisfied and (2) to designate the portions of the depositions that each side proposes to use and any objections thereto so that the issue can be presented to the Court on the first day of trial and ruled on as expeditiously as possible.

Again, however, this issue is not without some nuance. While the jury should be given an unvarnished view of the circumstances on the ground at the pivotal moments of the case, the Court is mindful of the possibility of undue prejudice to the Plaintiff if the presentation of evidence on the allegations of domestic violence reach the point of overkill. To balance these competing interests, the Court will intervene by sustaining an objection should the presentation of evidence on the relevant circumstances become excessive, repetitious, or otherwise prejudicial. And to the extent that any exhibits that any party seeks to introduce into evidence make reference to domestic violence, the Court will address those exhibits as early as possible during the trial and outside the presence of the jury. The ruling set forth above denies Plaintiff's

motion to categorically strike all references to domestic violence, but does not foreclose some redactions to avoid the "overkill" problem and attending prejudice identified above.[5]

> [FN5] Based on the Court's ruling denying the motion to exclude all references to domestic violence and the comments by counsel at the pre-trial conference, the Court infers that Plaintiff may no longer be interested in exploring whether the police reports can be admitted into evidence (see, *e.g.*, *Truesdale v. Klich*, 2006 WL 1460043, at *3 (N.D. Ill. May 26, 2006), and may wish instead simply to reserve the right to use the reports for impeachment and/or refreshing recollection. The Court will make further inquiry on that subject at the outset of the trial, outside the presence of the jury.

### F. Opinions on Tasers

Plaintiff moves *in limine* to prevent Defendants' lay witnesses from offering expert testimony about tasers. As discussed on the record at the pre-trial conference, the Court reserves ruling on this issue, but offers the following guidance. Given that neither party has designated an expert to discuss the capabilities of tasers, the testimony presented at trial will be limited to the personal experiences of Defendants (in operating a taser) and Plaintiff (in being the target of the taser). The Court will enforce the lines drawn by the Seventh Circuit in *Clarett v. Roberts*, 657 F.3d 664, 671-72 (7th Cir. 2011), to separate what is admissible consistent with Rule 701 (lay witness testimony) from what is inadmissible under Rule 702 (expert witness testimony).

## IV. Defendants' Motions *in Limine*

### A. Country Club Hill's Use of Force and Taser Policies

Defendants seek an *in limine* ruling to prevent Plaintiff from adducing testimony about (1) the Country Club Hills Police use of force policy, and (2) that subsequent to the events at issue in this case the Mayor of the City of Country Club Hills decided that police officers would no longer carry tasers. For the reasons stated in open court on November 28, 2011 and in accordance with *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) (finding that the "violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."), the Court grants the Defendants' motion as to both policies. *Thompson* squarely forbids consideration of the use of force policy, and there are several reasons why the change in policy as to the use of tasers after the incident at issue took place is inadmissible. In the first place, the municipal Defendant is out of the case. In addition, the probative value of the change in policy is minimal given when it occurred, and any probative value is substantially outweighed by the potential confusion to the jurors as well as the injection into the case of a distracting "mini-trial" on the pros and cons of the decision to discontinue the carrying of tasers.

### B. Theresa Lofton

Next, Defendants move *in limine* to prevent Plaintiff from calling Theresa Lofton as a witness because she was not previously identified in Plaintiff's initial or supplemental disclosures. At the pre-trial conference, the Court also became aware of a "may call" witness on Defendant's list – Officer Kapsalis – who similarly was not disclosed in a timely fashion. Ms. Lofton accompanied Plaintiff to the hospital on the day after the incident with the officers. Officer Kapsalis responded to a call involving a domestic incident at Plaintiff's home prior to the incident at issue in this case.

Based on the discussion at the pretrial conference, it appears that both parties are aware of the general lines of testimony that would be elicited from the undisclosed witnesses, neither of whom would present lengthy testimony. Thus, the Court cannot discern any significant prejudice that would inure to either party if the testimony of the late-disclosed witnesses were permitted. However, it is unclear whether either witness will be called or whether either witnesses' testimony would be admissible.

Plaintiff's counsel acknowledged at the pre-trial conference that his main purpose for listing Ms. Lofton was to testify about the trip to the emergency room and the record of that hospital visit that Plaintiff proposed to introduce into evidence. As discussed below, the Court does not see any basis for testimony from Ms. Lofton or anyone else on either party's witness lists concerning the hospital record. Similarly, the Court does not at present see any basis for calling Officer Kapsalis as a witness. Counsel indicated that he thought Kapsalis may be necessary to lay a foundation for the dissemination through the police department of the prior domestic incident involving Plaintiff of which one of the officers on the scene on May 29, 2004 apparently had knowledge. It is unclear whether any such foundation would be necessary; at most, the officer with the pertinent knowledge would seek to testify that he heard about the prior incident from another officer. If such testimony is admissible, it would be for state of mind, not for the truth of the matter asserted, and may be subject to a limiting instruction as well.

Given the uncertainties discussed above, the Court concludes that "[a] final determination on this issue is best reserved for when, and if [the witness] is actually called to testify at trial." *Maldonado v. Stinar*, 2010 WL 3075680 (N.D. Ill. Aug. 5, 2010); see also *Batilla v. Village of Cahokia, Illinois*, 2010 WL 119132, *1 (S.D. Ill. Jan. 11, 2010) ("[A] court may reserve judgment until trial, so that the motion *in limine* is placed in an appropriate factual context."); *Frazier v. Layne Christensen Co.*, 2006 W.L. 6041120, *4 (W.D. Wis. Feb 21, 2006) ("[T]he court retains the discretion to allow a witness who was not timely disclosed to testify if it will not prejudice the opposing party.") If either party wishes to call either of these witnesses to testify at trial, they must notify the Court at the earliest opportunity so that the Court may issue at timely ruling.

**C.    Medical Records**

Finally, Defendants move *in limine* to prevent Plaintiff from introducing a medical record from Plaintiff's visit to the emergency room. For the reasons stated in open Court on November 28, 2011, the Court grants Defendants' motion. The Court does not see how this record could be authenticated as a business record without the testimony of a hospital employee or a doctor. See *Cook v. Hoppin*, 783 F.2d 684, 689-90 (7th Cir. 1986) (In order for evidence to be admissible under Rule 803(6), it must be "transmitted by" a declarant "with knowledge" in the ordinary course "of a regularly conducted business activity. . . . This encompasses only declarants—like nurses or doctors in the case of hospitals—who report to the recordkeeper as part of a regular business routing in which they are participants." (internal quotation and citation omitted)). Nor can the Court fathom how someone other than the medical professional who created the record – or at a minimum the attending physician who supervised that person – could testify to the content of the record and state authoritatively whether the specific information contained in it is "of the type reasonably pertinent to a physician in providing treatment." Fed. R. Evid. 803(4); see also *Cook*, 783 F.2d at 690. To be sure, Plaintiff may testify that he went to the emergency room and may relate to the jury his condition that day based on his memory and subject to cross-examination.

**IV.    Conclusion**

For the foregoing reasons and in accordance with the Court's November 28, 2011 hearing, some of

## STATEMENT

Plaintiff's motions *in limine* [92, 93, 94, 96, 122] are granted to the extent set forth above and others [95, 97] are denied to the extent stated above. Ruling is reserved as to one of Plaintiff's motions *in limine* [98]. And Defendants' motions *in limine* [101] are granted in part and reserved in part.

*[signature]*